Page 18, Section 7066. Brought to you by the Executive Committee of the Bureau of the U.S. Trade and Mining at Arlington Trust, this is the New Mighty U.S. Trust. Do you want the paper? Do you want me to get the paper? Do you want it? Okay, I'll get it. Good morning. Good morning, Your Honors. May it please the Court, Daniel Weinberger, on behalf of Robert Sheep, Jin Te-shu, and Tong Sheng-tai, the Joint Executives of the Will of Ye Lan Wang. May I reserve two minutes for rebuttal? Yes. Your Honors, the District Court's dismissal of this case was wrong as a matter of law and fact. The doctrine of forum nonconvenience is a drastic exercise of the Court's inherent authority to be invoked only in those rare cases where a plaintiff has chosen to bring suit in a most inconvenient forum that is so vexatious and oppressive as to be out of all proportion to the plaintiff's convenience. This is not that case. Over eight years ago, this suit was brought against these D.C. defendants in their home forum, the very place where a new, mighty U.S. trust was formed for the very purpose of receiving the unlawful transfer of assets that gave rise to this suit. So you think the inconvenience focuses on the plaintiff? No. Well, it focuses on both. It's equal. You said the plaintiff. That's why I want to be clear. Right. The focus is on both. But I think your argument is that given that the plaintiff filed in the defendant's home jurisdiction, the burden on the defendant is particularly heavy. Not only that. That is certainly the case. But not only that, but plaintiffs also filed in the only jurisdiction where they could. It was the only place where these defendants were amenable to suit. But as you know, in forum noncommittee cases, judges have imposed conditions on the defendants to avoid those types of obstacles. Right, but that doesn't change the fact that the plaintiff's initial choice of forum was made for legitimate reasons. And here, in this case, seven years went by before these defendants consented to jurisdiction in Taiwan. So how does the district court found that the delay was not unreasonable because, in a sense, the case is still being teed up at its outset? And you're saying, yeah, but there's still a lot of time that went by. How should we evaluate that, given that much of the case still has to occur, including, I gather, all of the discovery? Right, well, the reality is that all of these things that have occurred already, if they were right, if the defendants were right, if this case was actually oppressive and vexatious, they could have and should have made that argument way back at the beginning. Instead, they moved to dismiss for lack of subject matter jurisdiction, and they were wrong, as this court held. They moved to dismiss for failure to state a claim on the very Taiwan law claims that they now argue are too inconvenient for the district court to decide. They moved to dismiss for failure to serve New Mighty Foundation properly. But aren't all those issues that could be easily resolved, regardless of where the district court sits, those are what those legal judgments? Well, they weren't. So is your criticism that they should have brought their forum nonconvenience motion in their answer? Is that it? They should have brought in their motion to dismiss. They had two motions to dismiss that they brought at the outset of this case. Almost all the defenses that they raised in both their first two motions to dismiss were defenses that they could have raised in their answer, and they chose to make a motion to dismiss. And the reality is, is that if this case were somehow to end up in Taiwan, they're going to raise a whole host of other Taiwanese procedural and jurisdictional defenses. Who knows what? Whatever their human ingenuity can invent, they're going to raise. And so many issues that we've already overcome over all these years are going to be raised. So let me just go down a list of points. Namely, that the plaintiff had no choice. That he filed in the defendant's home district. That the delay, as Judge Pillard mentions, there are several explanations for it. And a lot of time and expenses, time and money has been expended in connection with litigating these motions, even if it's at the early stages, pre-discovery of the case. Plaintiff's ability to get documents that are needed when, in plaintiff's view, they're here, not elsewhere. Defendants are sophisticated litigants. The New Jersey case shows they could have raised this form of non-convenience right at the beginning, as the Supreme Court has said is perfectly proper. And so the district court says, yes, but. And I want you to explore this with us. The way the district court sees the case and the way the district court in New Jersey saw the case is it's true that A.C., through his representatives, decided to establish these trusts in the District of Columbia and took advantage, as it were, of the opportunity to do so here. So that the trust could reasonably expect that they would be sued here and that they might encounter various difficulties in responding to a suit. But the district court says there are a lot of questions of Taiwanese law. You're suing under Taiwanese civil law. You are asking the court to interpret areas of law that are not settled under Taiwanese law. And why wouldn't this be something much more appropriate for the court in Taiwan to decide, being more familiar with the social, marital, sort of just the environmental aspect of deciding these very sensitive issues of first impression? Your Honor, I think the first thing I would note is I do not believe that there is another case, certainly not another circuit court case that I'm aware of, and probably not another district court case, perhaps aside from the District of New Jersey's decision, that has dismissed a case almost solely on the public factors that it considered. The public factors, while the Supreme Court has said, I believe in Gilbert, the court said, after going through all the private factors, said it has a place. It has a place in the analysis. Yes, it does. But the place in the analysis is not the same as it is in the private factors, as countless, countless cases have found. And in this case, in particular, the public interest factors are not that weighty. I mean, in cases where the public interest factors were significant, in Payne, in Piper, those are cases where multiple people died and the regulatory agencies in those governments, in those countries, were investigating it. You know, public corruption, those countries' governments were investigating it. This is not that case. And the reality is, I mean, they're asking, they're asking, how should we, they're trying to argue that this is such an important public policy question. The reality is, there's pretty much only one person who's still alive. Actually, now he's dead, but people, purported spouses who claim to be multiple spouses, that's probably the only one left in Taiwan for a law that, for almost 100 years now, it's been unlawful to have multiple spouses. This issue is not going to arise again. This is not a particularly important issue of Taiwan law. It's hard to understand. It seems like each side has a different characterization of what this case is about legally. The complaint presents it as a case about someone who's entitled to proceeds from an estate, and some of the money has been hidden away in Washington in trusts. So it's somebody who's claiming an ownership interest, trying to get access, and that's a D.C. question of, you know, is D.C. trust law, is D.C. other kinds of law being used as a vehicle for a fraudulent conveyance? And I take that to be more or less your characterization, and your opponents characterize this as, you know, an issue of first impression that turns on, you know, relative rightful shares, and turns on this history of polygamy that's, you know, been illegal since 1930. It's hard for me to understand how to reconcile those views and how to understand the case. I mean, I think, first of all, those issues that the defendants have raised, they're not the central question in the case. The central question in the case is whether these assets belonged to the marital estate. That's the primary question. They're trying to bring in a question that's way down the road, that a non-party to this case can raise sometime down the road if the plaintiffs win here. P.C. Lee, the purported third spouse of Y.C., she can bring suit tomorrow in Taiwan, under the Taiwan Family Act, and argue that she is a spouse of Y.C., and therefore entitled to a share of the assets. And if a Taiwanese court had said, yes, you're right, then the plaintiff's damages in this case may be lessened, but it doesn't take away their claims, and it doesn't change the basis of this case, which, as you said, is essentially a fraudulent command to a D.C. trust. All those issues, they've chosen, P.C. Lee has chosen not to assert those claims. She knows that she can do that. She started to do it, and she voluntarily discontinued those claims. She can do it. Instead, they want to argue piecemeal wherever they can, and say, oh, wait, you know, she's a spouse, and you need to, you know, we're allowed to assert this defense. They don't have a right under Taiwan law to even assert that defense, in our view. And there's no question that Yue Lan is an heir, was an heir. Right. Yeah, I mean, that's not the central focus. I mean, there's no dispute that for 72 years, she was a spouse of Y.C. So that's not, the domestic relations question that they're raising is not the central question in the case. And I would also note that, you know, first, the Supreme Court has strictly limited the, quote, unquote, domestic relations exception to the abstention doctrine to the extent it has any relevance at all. But also, federal courts have on multiple occasions dealt with issues of domestic relations. But wait a minute. Now you're sort of speaking out of both sides of your mouth, because I thought you just told us, this is not a case that requires resolution. We don't know. We don't. Of the domestic relations issue. It's basically, assume that Yue Lan is an heir. She is standing. Right. And the question is, was the money that's in New Mighty part of the estate or not? And so it's a question about the trust. It's a question about the setting it up. It's a question about the provenance of those funds. Absolutely. Absolutely. Apart from any. And in fact, it sounded like you were considering that the proper forum for figuring out the domestic relations issue is Taiwan. Taiwan. Yes. I mean, we do. We do believe that that is where PC Lee should raise that argument. The only reason I even brought up the other point is because they're going to come back here and try to argue that it has to be brought here. We don't agree with that at all. We don't. We don't think that that has to be addressed here. I think the the issue also of I don't know if you want me to address the issue of deference in this appropriate standard. They should be applied. I just want to follow up a little bit because the district court statement here is that it viewed the central question as to whether you want a lifelong resident and citizen of Taiwan was denied certain spousal rights under Taiwanese inheritance law. And then goes on to say the case would implicate questions of Taiwan's social policies and family law. Hardly the local interests of a federal court. So you take direct issue with that view of the case. Yes, because essentially what the other sides argued, if I can draw an analogy here to the Piper case, they're essentially saying, let's let's pretend that the plane never crashed and that's what this case is about. Well, no, I mean, if the plane never crashed, these assets never came here, there would be no case. It wouldn't exist. And not only that, I mean, you could take it even a step further and say, looking at Piper, imagine that Piper was created for the sole purpose of doing flights back and forth between Blackpool and Perth. And that's what's going on here. And the central focus of the case is whether these this D.C. trust and D.C. foundation received these assets or were holding and are holding these assets improperly. That's the question. I think that's a critical question. And I mean, and also when it comes to the private factors, I believe that the court made the district court made numerous errors. When it looks at the when it looked at the well, let's start with translations. I mean, 35 years ago, a district court said in the in Ray Reid case in any international case, there's going to be issues of translations, whichever side of the world this case is hard on. And in this case, there is certainly is certainly going to be the case. The Declaration of Trust itself is in English. You know, if we were to go over to Taiwan and argue, well, we're going to quibble about, you know, how we're going to how it should be translated. It's the same issue. There's going to be tons of documents in English. You haven't challenged the validity of the trusts themselves. And this just strike me as extremely vague. But that's not part of the case is challenging the validity of these trusts. Well, we do not have the information. It is certainly possible that the actual conveyances themselves were unlawful. We certainly think that the claim that they made years down the road, that the trustees and the trustee of New Mighty US Trust irrevocably delegated their authority to these trust matters. We definitely think that that would be a violation of D.C. law. Now, we've never seen these supposed delegations, which presumably are in writing. And I would have to imagine they have all sorts of qualifications in them. Because let's let's imagine that these trust managers decide they're just going to steal the funds. Right. The D.C. trustee can say, oh, well, we, you know, we washed our hands of it. We're the trustee, but, you know, we don't owe any fiduciary duty. They can't they can't do that. So there certainly are potential questions of D.C. law about how the trust is operated here. You know, we need discovery to fully flesh those issues out. You know, we couldn't we couldn't just assert things that we don't have the full information yet to address. And that's part of the issue. I mean, we will be deprived when I say we, I mean, the plaintiffs will be deprived of the access to evidence necessary to prove their claims in Taiwan. Non-parties cannot even be compelled in Taiwan. Non-parties in Taiwan cannot even be compelled to produce evidence. Their expert kind of quietly ignores that issue. But that's the law. So while they might try to argue, well, there are certain certain individuals, witnesses who really are witnesses favorable to them who would come here regardless if they asked them to. They could put them up in Taiwan. They could say what they want. And the plaintiffs wouldn't be able to obtain documentary evidence to undercut their position. And the reality is also they have the burden. And one of the issues is the the cost of not sorry, not the cost. The ability to compel or compulsory process of unwilling witnesses. They have not anywhere shown that any of the witnesses that they would want to call would be unwilling to attend trial here or to be deposed or anything else. It's their burden. In El Fado, this court held that the defendants hold the burden on all of the elements of a foreign nonconvenience. What about enforcement? The record is a little confusing on that. Enforcement of a judgment. The district court has made a condition of the dismissal of the case that these defendants agree to submit to the jurisdiction of the court in Taiwan. And if they do and if you win, is it your understanding that because they are entities and they have submitted to the jurisdiction that you can collect then and there in Taiwan? No, not at all. And in fact, they argued against enforcing, you know, making a judgment enforceable. That was a little confusing to me because they argued against I thought it was a term that said that they would not oppose enforcement, which is much broader than this. I think it was that they would they would consent to to collection. Yes. And they haven't consented to collection. But under the law, as you understand it, is the assertion of personal jurisdiction over them in Taiwan is not enough. No, I mean, the assets are are either. I mean, they are the assets. I mean, they know. No, I mean, I mean, the assets very well. If their shares of a company, they could be in Delaware and you'd have to go to Delaware and say, you know, turn over, turn over the shares, change title, the shares to, you know, to the plaintiffs. I mean, there's a reason why they opposed it. Not, you know, it wasn't just academic. They opposed a lot of things. And in all reality, all of the things that they opposed were not forum nonconvenience issues. There were issues to forum shop to help them win, to make it harder, to make it less just. For this case to be properly resolved. I'd like to unless you have further questions, I'd like to reserve. Yes. Good. Thank you. All right. Council for a police. Good morning. May it please the court. John Gardner from Scadden Arps for the police. New Mighty US Trust, New Mighty Foundation and Clear Bridge LLC. Your honors, Judge Boasberg got it completely right when he decided to dismiss this case in favor of a Taiwan form. His decision is entitled to substantial deference on this appeal and can only be reversed if there is a clear abuse of discretion. Judge Boasberg did not come close to abusing his discretion in determining that this case belonged in Taiwan. And indeed, when analyzing that question respectfully, one must bear in mind what the Supreme Court has said. The central purpose of an FNC inquiry is, and that is to determine convenience for trial. Now, we've heard from my friend about their view. You agree, though, do you not, that your burden is particularly heavy since plaintiff Sui and your clients form jurisdiction? Well, no. No, I don't agree with that, Your Honor. Well, I mean, that's the Supreme Court. Well, no, I don't think so, Your Honor. With respect, what the Supreme Court has said is that when a foreign plaintiff sued... That's a different question. That's not what I asked you. I apologize. All right. You asked whether I agree with a very heavy burden. When you're sued in your own home jurisdiction. Well, we do have a heavy burden, but I apologize. I took the other side of that question, which has been raised also in the papers, which is what amount of deference is demanded in this situation. But I agree we have a heavy burden. Indeed, Judge Boasberg noted that it was our heavy burden when he went about his analysis. He specifically says that before he gets into the analysis. He talks about the fact that a defendant moving on foreign nonconvenience grounds bears the burden on each point. So he had that in mind. What about the list that I went over with appellant's counsel in terms of looking at what the district court was addressing and its analysis? And really, the problem is the burden on the district court. But that was the thrust of what I got out of the opinion, that the district court was not familiar with Taiwanese law, that documents would need to be translated. And yet our court has held that, you know, documents need to be translated no matter where something is filed, and that can't be dispositive. On its own, a translation issue would not be dispositive, but that's only one of very many issues that the district court found to be problematic in this case. If I could go to the central point that we're at odds with my friend on. Judge Boasberg correctly found, as Your Honor pointed out when addressing it with counsel for the appellant. Judge Boasberg correctly found, and he found it in a number of places. The central question here is whether Yu Lan Wang, a lifelong resident of Taiwan, was denied certain spousal rights under Taiwanese inheritance law. What importantly we didn't get to is, indeed, each count in the second amended complaint is in some way premised on her claimed entitlement to her full share of YC's marital estate. But isn't she allowed presumptively to assert her full share? I mean, the other putative wives are not in the case, and I'm not entirely sure why you and how you represent their interests here. We do not represent their interests, and we're not looking to get money for them. What we are doing is defending a case under 1030-1 and 1030-3 of the Taiwan Civil Code. And under 1030-1 of the Taiwan Civil Code, which they use as a predicate for their claim, they must first establish that Yu Lan Wang was entitled to the full spousal share. Because if she was not entitled to the full spousal share, as the District of New Jersey Court found when dismissing the companion action on four non-convenience grounds, if she was not entitled to the full spousal share, then under 1030-3 establish that she was shorted in her entitlement to a part of YC Wang's assets. That's why these defendants in defending a 1030-3 claim are entitled to say, but wait a minute, it's not been established that you were the sole spouse. That's a key allegation they've made. I'm not sure that I'm entirely following that. Does that just have to do with the numbers in this case? Because if I'm entitled to a half share, or a third share, or a sixth share, and the marital estate has been significantly diminished by some of the money being taken overseas, no matter which size of share I'm entitled to, I would want to pursue that. You might want to pursue, but this again goes to one of the issues that Judge Bosworth was alive to. You might want to pursue it, but you first have to get through a few stages to get there. Firstly, you have to establish, were you the sole spouse? And the reason you have to establish that is because if you were not, then you're not entitled to the full 50 percent spousal interest. No, but here's what we're getting at. Suppose she's only entitled to a third. Let's just look at that. The pot is going to be bigger if she can prove that the trust assets should be part of the marital estate. The pot would be higher by some amount, but what you have to remember here, Your Honors, is that when Y.C. Wong's estate was distributed, it was $1.7 billion. If you assume that there's a 50 percent marital share, then that would be half of that. Already you have a Taiwanese legal issue embedded in the case because there was a settlement agreement which was entered into with all three wives. We say that settlement agreement recognized all three wives had a claim on that interest. And we say, in fact, that disposes of that case. If the pot is higher, it has to be much higher, and that's a question that the court would have to deal with. So why can't the district court here decide what that settlement agreement says? It could, but it would have to bring everybody here to decide. Not necessarily. We've got Skype. We've got all kinds of ways of getting witnesses for the court that are not physically here. Let me talk about who those witnesses would be for a moment. The settlement agreement, if we go to that for a moment, and I will want to come back to the difficulty on the number of spouses, but the settlement agreement was entered into by the heirs of Y.C. Wong. It was entered into by the first family, Yuolan Wong through Winston Wong. He's her sole legatee. It was entered into by all of his siblings and his mother. All of those witnesses do two things, and they're all in Taiwan. All of those witnesses do two things. One, was it in fact recognized in the settlement agreement that there were three wives? Two, were in fact the spousal share interest claims settled? Was it the intention to settle those claims? Three, all of those people other than Winston Wong have sworn in declarations in the New Jersey case that their mother was married to Y.C. Wong. Those people are siblings of Winston Wong, the principal antagonist here. They would all have to be witnesses on those issues. They all are in Taiwan. That's what the judge was getting at when he talked about the difficulty of the witnesses who are relevant to the matter being in Taiwan. It's still not entirely clear to me if that was a settlement and the plaintiffs characterized that as a settlement with respect to the Taiwan assets, with respect to that $1.7 billion. So that's a question. But assuming that Yue Lan were able to recover some amount of money here, they would be in a sort of inverse position to the position that you would have. The second and third wife would either, you know, they would have to come here, or Yue Lan's representative would have to go to Taiwan. Somebody has to seek assets somewhere. The assets are here, and they haven't come forward to make any claim on those assets. It's just not clear to me if she has a claim, and the question is only do other people also have a claim. It's just not clear to me why the fact that other people who are not in this case might also have a claim, why that would dictate where this claim, which has been raised and pressed against a D.C. against D.C. trusts, why this claim would have to go somewhere else. Well, let me address, first of all, the fact is that it's a defense to a 1030-3 claim that the person bringing the claim was not shorted in the first place. And that's a defense these defendants are entitled to make. So that's why I was asking about is it about the amount of money, that they think even if she's entitled to a bigger share, she's already received enough money to cover the bigger share? I apologize. Not only that. The problem that she has is that she did get distributed assets from the estate pursuant to the settlement agreement. As they plead themselves, she would have to show that the estate was two times what she got, because she's only entitled to half. What Professor Sue has indicated and stated is her remedy, and if she didn't take it, she waived it, her remedy was to go against the other half that she didn't get and satisfy herself through that other half, the other half which was available before any other heir was distributed a penny. That's what she should have done. She did not do that. But her view may be, I only want my fair share of the marital estate, but the marital estate, I believe, is larger. If I lose my claim that it's larger, I don't want to take from the others. But I do want to take, you know, that she was willing to settle that, you know, for whatever reason. But she's, you know, her position is, to the extent that the marital estate is larger and I can so establish, I'm entitled to part of that. Why is that, why does that necessitate some prorata determination in advance as opposed to... Well, not necessarily in advance, but at trial it does, because these defendants are entitled to say there is no extra that you are entitled to because your contribution to the marriage was exactly what you got already distributed and or you could have gotten distributed by taking from the other half of the estate. There's no reason these defendants are hamstrung from making that defense to a 1030-3 claim. In fact, as our expert has pointed out, it's a perfectly legitimate and reasonable position that any defendant would take. And our concern, frankly, and the judge's concern, was that those issues are issues that the Taiwan courts are available to determine. What is problematic in our view is why these three executors, each of whom is a lawyer in Taiwan, one of whom is a family lawyer in Taiwan, is familiar with the law in Taiwan, why they are so resistant to trying this case in their own home forum. In these circumstances, what we say is, what's going on? They're the people who were substituted into the case only in 2016. They filed an amended complaint only in 2017. When they filed the amended complaint in 2017, they expressly told the court, the reason you should allow us to amend this complaint is because the case is still in the starting blocks. It hasn't gone anywhere yet. So they are only new to the case. They have the ability to try the case in Taiwan. It's not like we're trying to say to them, you can't try the case. It's not a dismissal with prejudice. It's a dismissal in favor of a court where the court is familiar with the law, the morals. Some of those things are not things this court would be familiar with, trying the issue of whether you could have three spouses, which is something that... Right, showing my unfamiliarity with that. Since polygamous marriage was outlawed in Taiwan in, what is it, 1930, how could there be more than one wife? Well, the court in Taiwan has already held there was more than one wife in the high court decision. I read that in your brief, but that was for a particular purpose and also was not appealed. It was the appeal. They claim it's not precedential. Our expert doesn't agree with that. Let me talk about that decision for a moment. That decision, they pled in their, well, Winston Wong pled in his amended complaint in this action that the indicia of P.C. Lee not having been a spouse is that a lower court case in Taiwan had held her not to be a spouse. But that very case that Winston Wong had cited was reversed by the high court in Taiwan. And the high court in Taiwan found that P.C. Lee was the sole surviving spouse of Y.C. Wong and found that because by the time that decision came up, both Yu Lan and Yang Chao had passed away. If I could finish, the answer to the question of why does it... Taiwanese reversals? Well, polygamy. It's allowed, but there is a right of somebody to come in and seek to nullify the second or third marriages. But because P.C. Lee was married and nobody came in to seek to annul it, it remains valid. That's the answer to the Taiwan law question. That's laid out in our expert support. It's, of course, somewhat challenged by Professor Chan on their side. Those issues are obviously deeply embedded in Taiwan culture and something that we say also supports the transfer of the case, sorry, the dismissal of the case and its refiling in Taiwan should these executors be so advised. I'm willing to say I may not understand this, but I was sort of surprised that you couldn't sue trusts established in D.C. in the D.C. federal courts. But what are we to make of the fact that the trusts were represented by the same firm in New Jersey, and in 2011, it filed a motion to dismiss on forum nonconvenience ground? It did not take that tactic here in the District of Columbia. And given that some of the delay here was because we held the case in advance, waiting for the Supreme Court to decide, and then because of the death and the need to appoint the executives of the state. But nevertheless, this is sort of a late gasp, isn't it? Well, no, I don't think that's a fair comment. Well, at least there's a lot of years, 2011 and 2016. Yes, and I'd like to cite to Judge Boasberg on this. So what I'm trying to get at is to the extent this is your home district where the trusts are founded, the inconvenience to the trust of presenting its case, isn't that something that was contemplated in effect by A.C. when he authorized establishing the trust here? I mean, he contemplated the trust could be sued here, and that given his own lifestyle, there were bound to be challenges. Given the amount of money, there were bound to be challenges. And he was willing to have the courts here resolve matters as to the trust. Well, with respect, Your Honor, there is no forum selection clause or anything else suggesting that any case over the trust would come to D.C. There's no evidence that Y.C. Wong in any way thought that there would be a... He's a sophisticated businessman. He's got all kinds of advisors. Somehow he died and tested. Another issue of Taiwan culture, because Taiwanese people are not inclined to make wills. Fine. But he knew the way the game was played. And he set up all these trusts. But this suit has nothing to do... I think Judge Pillard asked the question. This case has nothing to do with the validity of the trusts. The trusts are simply D.C. trusts into which assets were placed. There's no allegation... But the response to Judge Pillard was they don't have the discovery to make an unfounded allegation yet as to the establishment of the trust. So that's later down the road. And that falls, it seems to me, in your lap in terms of an argument. This is a very early stage of the case. And even though we're awfully late in raising this motion, there's no requirement we had to raise it further. And so let's start the case in Taiwan, even though we're not sure that the Taiwanese courts have the ability to get the documents, much less allow a plaintiff to get the documents, under its own law. And it hasn't entered into the Hague Agreement. And it's not clear whether the plaintiffs will be able to get the type of evidence they claim they would be able to get by suing here. But Judge Boasberg dealt with each and every one of those issues in his opinion. He dealt with specifically all of those assertions. And I'm asking you how persuasive he is. I think very persuasive. And indeed, the courts have been cautioned about conducting de novo review about his exercise of his impression of what that post-Saint-Sermon... This is not de novo review. This is for a clear abuse of discretion. Understood, Your Honor. So I'm asking questions. And you can't respond by saying, well, the judge said that. No, absolutely. But I'm pointing out the judge did say it. In other words, he didn't miss the point. He did go through each of these factors and address them. And so with respect to the issue, I was talking about the validity of the trust. And I want to focus on that issue first. Not on the transfers into the trust, but on the validity of the trust. And you don't want to talk about the evidentiary problem. No, I do. But I want to talk about it a second. Because they raised in their reply brief an issue with respect to the Bermuda proceedings that they had not previously raised. No, no. Actually, I don't want to make that point. I don't want to make that point. What I want to say about that is they criticize, and this goes to the validity point, they criticize us. They're saying we're taking different positions in different places. They say we haven't moved for form non-convenience in Bermuda. That must mean that this is a strategic move for form non-convenience here. But I want to point out that in the record, you have the amended complaint in the Bermuda case. I'll get you the record site. In that case, what is being challenged is the validity of the Bermuda trusts. What is being challenged is a statement by Winston Wong that the Bermuda trusts were not properly established in accordance with Bermuda law. The right place for those claims to be determined is in Bermuda, where the Bermuda court is going to get to opine on its law. The right place for these claims to be determined is in Taiwan, where the Taiwan court will get to determine its own law. Well, these claims being claims about the, as you said, the transfer of money into the trusts, that doesn't seem particularly rooted to Taiwan. That isn't the claim. That's the problem. No, because the claim is under Taiwan law that she was a spouse who was shorted. And unless and until you establish that, nothing else will come into play. Second, and let me go to the issue of the final issue with respect to my Bermuda point is, in addition, there are no claims under these Taiwan civil law code provisions that play in Bermuda. So that was a non-point that was raised in the reply, not before. And I just, because we were on the question of validity, I want to deal with it. Next point, with respect to the transfers into the trusts. Those transfers in have to do, are alleged to have taken place with respect to chairs in Delaware corporations that are alleged to have been transferred into these trusts. And in which Y.C. Wong is alleged to have had a beneficial interest. Again, Y.C. Wong is the person alleged to have orchestrated a transfer of those shares into the trusts. And this is another critical element of the 1030-3 claim. For the specific purpose of diminishing the spousal share of Yu Lan Wong. That is not an accepted allegation. That is a defended allegation. And that also will bring up issues that are uniquely available in Taiwan. Firstly, frankly, who was Y.C. Wong? How come he had three wives? What did he think of his wives? Was he the type of person who was transferring assets away in order to deprive his wives of spousal shares? No, you would talk to the people in Taiwan. What we're looking at is he transferred this. What were the reasons that he explained to the people he asked to set up the trust? No, the people that he interacted with on a daily basis were the people in Taiwan at FPG who were the people who were his business colleagues and his friends and his family members. All of whom were over there. So there's no allegation that there was any conversation about the purpose of setting up these trusts with the people who established them. And in fact, when you look at the list of people that my friend has come up with, his list of people who are in this district is limited to six people. In fact, it's really double counting because he counts the law firm that set up the trust as well as the partners in that law firm that set up the trust. This district has virtually no involvement in this matter, save for, as Judge Boasberg found, the mere fact that the trusts were set up here. The rest of this case, the entirety, is located in Taiwan. And that's why Judge Boasberg concluded, as he did, that this case belonged in Taiwan. And just one, because I know my time is well up. The court was correct in stressing that under Gilbert and under Piper, and in accordance with this court's precedent, it is sufficient for the court to have determined that its own processes would be substantially burdened and inconvenienced by the retention of this case in this forum. The courts clearly in BPA and in Jackson, this court has said that it is appropriate to look at whether the court's own inconvenience is so substantial that that would justify this decision. Well, New Jersey said he was in a very busy docket. Judge Boasberg did not say that. Who is in charge of the BVI companies? Who's in charge of them? Well, there was an individual, Mr. Hung, who was the owner of those companies. He is deceased now. Who now runs those companies? Well, the assets of the BVI companies were transferred into the trust. I'm actually sitting here today, I'm not sure who runs them presently. All right. Thank you. All right, Counsel for Appellant. Your Honors, a few points. The first relatively minor point is my friend on the other side said that they're now arguing that the Taiwan High Court ruling does have precedential effect. Their experts specifically said JA2180, JA2181, the High Court ruling does not have binding precedential effect. So what they said was incorrect. Also, as to the amount of the funds, everyone agrees there was $1.7 billion of Taiwan assets. This case is over $2.162 billion. No matter what happened, Yalon was shorted. If those $2.162 billion were part of the settlement agreement, the amount that she would have received would have been double, more than double, actually. So no matter what, she was shorted. Another issue is, obviously, if they knew from day one that these claims were asserted under Taiwan law, absolutely no question. If it was so oppressive and vexatious for them to defend here, why didn't they move to dismiss on day one? So I guess, counsel, you know the law on that as well as I do, so you asked us to adopt two rules, but they would be new rules. So given that at least at the time they filed the motion, we hadn't held that it would be untimely and therefore had to be necessarily denied or dismissed, what do you say more generally, though, to the argument that a district court judge could have agreed with your view of the case but didn't? So you in your brief make an effort to show errors of law, but basically you have to show a clear abuse of power. And I think that's a good question. As I understood it, you were suggesting that the district court had given too much weight or inappropriate weight to the public factors. Is that your basic argument? Well, it also failed to give proper deference to the plaintiff's choice of form. Either one of those, in our view, is sufficient to require reversal. You take them together and you take them with their delay and you're way, way beyond the point at which it would be remotely appropriate to dismiss. But we think that any one of those errors alone is sufficient to require reversal. Is that national tax administration document that you assert establishes Yulan as the sole spouse, is that in the record? No, I do not believe it is in the record. Why not? Well, it was alleged in the complaint. It was a complaint, so they made a threshold motion to dismiss in the complaint. So there was no evidence in the record to put it there, or there was no occasion to put it into the record. The other issue is that in Piper, the court said, speaking specifically, Judge Rogers, to your question about the public factors. In Piper, the court said, under Gilbert, dismissal will ordinarily be appropriate where the trial in the plaintiff's chosen form imposes a heavy burden on the defendant or the court, and where the plaintiff is supporting his choice. We have provided specific reasons supporting our choice. First of all, obviously, it was the only place where we could have sued, but also our access, the plaintiff's access to evidence is substantially greater in this forum than in Taiwan. How do we think about that, though? Because Taiwan, as a court system, I don't think it's been held to be inadequate. And some of your argument seems to be saying, well, but we couldn't get, because of the nature of how adjudication is done there, we couldn't get access through, you know, out of jurisdiction depositions or the like, because that court wouldn't be interested in it. Isn't that something we can't actually consider? No, I don't think so, because I think that question, there are two separate questions. One is the adequacy of the forum. It's a civil court, it has a whole different investigative process, and you're not criticizing that. No. What we're saying is the factor, the access to evidence, is less, as a matter of fact, there than it is here. And that's a private factor, not the adequacy of the forum. And remind us exactly why you don't think you have access to evidence there. Because non-party witnesses in Taiwan are not required to produce evidence. According to them, they can be compelled to serve as witnesses. There's evidence in the BDI, clearly, that could never be compelled in Taiwan. But why isn't that just making a comparative point about the process that the Taiwan court system believes is adequate, that you don't prefer? Well, it's not just that we don't prefer it. The question is what jurisdiction best serves the interests of justice. Typically when we look at the access to evidence, we look at people are here, people are there. The airplane in Piper is in Scotland, it's not in California or Pennsylvania. And you're making a different claim, which is in a way a comparative legal process claim, saying that the kinds of processes that the Taiwan courts, for their own purposes, recognize as adequate, that don't involve getting evidence from the BDI or don't involve compelling non-party witnesses, you don't like those. They're not going to work for you. And that's a different kind of access to evidence claim. Well, also, though, the witnesses that they say they would call, they've not shown that those witnesses would not voluntarily appear here. I understand that. So they can't even meet their threshold burden to argue that Taiwan is, you know, that the private factors favor Taiwan. They can't do that. Well, the courts do take into account costs of bringing people as well as the availability of compulsory service. I mean, I would respectfully say with respect to cost, counsel have incurred more costs probably in the last day than it would cost to bring all of the witnesses combined here. And then let's not forget about the petition for certiorari, which frankly probably had about a 1 in 10,000 chance of succeeding. I don't know how much that costs. And I also think that's probably the only case in history of forum nonconvenience where a party has sought to invoke the jurisdiction of the United States Supreme Court on another issue before they even once asserted forum nonconvenience. I can't imagine that's ever happened before. Only that I think as a matter of justice, it would truly be a perversion of the forum nonconvenience doctrine to send this case to Taiwan after all these years where the evidence, where the plaintiffs would not have access to the evidence necessary to prove their case and where these defendants are not genuinely prejudiced in having to defend here. Thank you, Your Honor.
judges: Rogers, Griffith, Pillard